COMMONWEALTH of Pennsylvania,
Appellee

v.

**Jeremy Lee SHAWVER, Appellant.**

Superior Court of Pennsylvania.

Submitted Nov. 29, 2010.
Filed March 21, 2011.

---

Brian V. Manchester, Bellefonte, for appellant.

Sean P. McGraw, Assistant District Attorney, Bellefonte, for Commonwealth, appellee.

BEFORE: STEVENS, GANTMAN, and FITZGERALD *, JJ.

OPINION BY GANTMAN, J.:

Appellant, Jeremy Lee Shawver, appeals from the judgment of sentence, entered in the Centre County Court of Common Pleas, following his guilty plea for two counts of driving under the influence, high rate of alcohol ("DUI").[1] Appellant asks us to determine whether his sentence is illegal because the sentencing statute at 75 Pa.C.S.A. § 3806, violates his constitutional rights to equal protection/fundamental liberty. We hold Appellant's sentence is

---

* Former Justice specially assigned to the Superior Court.

1. 75 Pa.C.S.A. § 3802(b)

lawful, and his claims merit no relief. Accordingly, we affirm.

The relevant facts and procedural history of this case are as follows. On April 12, 2008, police arrested Appellant for DUI. Appellant accepted Accelerated Rehabilitative Disposition ("ARD") on July 22, 2008. On October 3, 2009, while he was still in ARD, police again arrested him for DUI.

On February 16, 2010, Appellant was removed from the ARD program. That same day, Appellant pled guilty to both the April 2008 and the October 2009 DUI charges. On February 17, 2010, Appellant filed a motion for a pre-sentencing hearing. Before sentencing, the court held a hearing on April 9, 2010, at which Appellant argued that the court should not consider his October 2009 DUI as a "second offense" for sentencing purposes because the Pennsylvania DUI sentencing statute unconstitutionally subjected "similarly situated offenders" to disparate treatment.

On April 13, 2010, the court sentenced Appellant for his October 2009 DUI as a second-time offender, consistent with Section 3806. Appellant timely filed a notice of appeal on April 26, 2010. On April 29, 2010, the court ordered Appellant to file a concise statement of matters complained of on appeal pursuant to Pa.R.A.P. 1925(b), which Appellant timely filed on May 17, 2010.

Appellant presents the following issues for review:

[WHETHER] THE TRIAL COURT ERRED IN NOT FINDING THAT 75 PA.C.S.A. § 3806 VIOLATED APPELLANT'S RIGHTS TO EQUAL PROTECTION?

[WHETHER] THE TRIAL COURT ERRED IN SENTENCING APPEL-

LANT AS A SECOND TIME OFFENDER?

(Appellant's Brief at 1).

In his issues combined, Appellant challenges the DUI sentencing provision at 75 Pa.C.S.A. § 3806. Specifically, Appellant argues the section violates his constitutional right to equal protection. Appellant contends the statute disparately treats defendants like him, who commit a DUI, accept ARD for that offense, commit a subsequent DUI, withdraw or have ARD revoked, and receive a sentence for the subsequent DUI as a "second offense." Appellant complains he suffered a more severe punishment than those defendants who are sentenced for multiple DUI offenses simultaneously and who have not had a prior disposition for the initial DUI. In other words, Appellant submits the sentencing statute unfairly treated him as a second-time offender because he accepted ARD for his first DUI. Essentially, Appellant suggests his acceptance of ARD should not count as a prior disposition at sentencing. Appellant offers that the definition of "prior offense" should mean "successful **completion**" of ARD.

■ Appellant urges the Court to subject the statute to strict scrutiny because the classification at issue implicates his fundamental right to liberty. Appellant asserts Section 3806 fails to pass strict scrutiny, as the enhanced sentencing is not necessary to achieve a compelling state interest. Appellant concludes this Court should declare his sentence illegal, vacate his sentence, and remand the case for resentencing. We disagree.

■ All properly enacted statutes enjoy a strong presumption of constitutionality. *Commonwealth v. Bullock,* 590 Pa. 480, 487, 913 A.2d 207, 211 (2006), *cert. denied,* 550 U.S. 941, 127 S.Ct. 2262, 167

L.Ed.2d 1103 (2007); *In re C.C.J.*, 799 A.2d 116 (Pa.Super.2002).

> Accordingly, a statute will not be declared unconstitutional unless it clearly, palpably, and plainly violates the Constitution. All doubts are to be resolved in favor of finding that the legislative enactment passes constitutional muster. Thus, there is a very heavy burden of persuasion upon one who challenges the constitutionality of a statute.

*Pennsylvanians Against Gambling Expansion Fund, Inc. et al. v. Commonwealth of Pennsylvania, et al.*, 583 Pa. 275, 292, 877 A.2d 383, 393 (2005) (internal citations omitted). Appellate review of constitutional challenges to statutes, disputes over the legality of a sentence, a court's application of a statute, and general questions of law involve a plenary scope of review. *Commonwealth v. McCoy*, 895 A.2d 18, 24 (Pa.Super.2006), *affirmed*, 601 Pa. 540, 975 A.2d 586 (2009). "As with all questions of law, the appellate standard of review is *de novo....*" *In re Wilson*, 879 A.2d 199, 214 (Pa.Super.2005) *(en banc )*.

"The essence of the constitutional principle of equal protection under the law is that like persons in like circumstances will be treated similarly. However, it does not require that all persons under all circumstances enjoy identical protection under the law." *Commonwealth v. Albert*, 563 Pa. 133, 138, 758 A.2d 1149, 1151 (2000). *See also Bullock, supra* at 493, 913 A.2d at 215 (reiterating equal protection clause "assures that all similarly situated persons are treated alike[;] it does not obligate the government to treat all persons identically. Thus, the Clause does not prevent state legislatures from drawing classifications, so long as they are reasonable").

> Equal protection analysis recognizes three types of governmental classification, each of which calls for a different standard of scrutiny. The appropriate standard ... is determined by examining the nature of the classification and the rights thereby affected. In the first type of case, where the classification relates to who may exercise a fundamental right or is based on a suspect trait such as race or national origin, strict scrutiny is required. When strict scrutiny is employed, a classification will be invalid unless it is found to be necessary to the achievement of a compelling state interest.

> The second type of case involves a classification which, although not suspect, is either sensitive or important but not fundamental. Such a classification must serve an important governmental interest and be substantially related to the achievement of that objective.

> The third type of situation involves classifications which are neither suspect nor sensitive or rights which are neither fundamental nor important. Such classifications will be valid as long as they are rationally related to a legitimate governmental interest.

*Commonwealth v. Bell*, 512 Pa. 334, 344–45, 516 A.2d 1172, 1177–78 (1986). In *Bell*, the Court held that the defendant's equal protection challenge to the classification created under the mandatory sentencing statute at issue did not implicate the defendant's fundamental liberty interest because the defendant had already forfeited his freedom from confinement by virtue of his conviction; where the classification goes to the duration of confinement, the defendant has no fundamental right to avoid punishment or any right to a particular punishment within the statutory range. *Id.* at 346–47, 516 A.2d at 1178–79. Likewise, courts generally apply a rational basis analysis to equal protection challenges to criminal statutes creating different categories among criminal offenders. *See, e.g., Albert, supra* (applying rational

basis analysis to equal protection challenge to criminal statute governing sexual assault of minor where classification was based on offender's age); *Commonwealth v. Atwell,* 785 A.2d 123 (Pa.Super.2001) (applying rational basis standard to equal protection challenge to criminal statute governing aggravated harassment by prisoner, where classification was based on offender's prison inmate status); *Doe v. Miller,* 886 A.2d 310 (Pa.Cmwlth.2005), *affirmed,* 587 Pa. 502, 901 A.2d 495 (2006) (applying rational basis test to equal protection challenge to sex offender registration statute, where classification of convicted sexual offenders as category of felons was deemed economic and social legislation that was reasonably related to legitimate state interest in promoting public safety and welfare).

Historically, this Court has held the classifications created under the state DUI statute do not implicate a fundamental right or a suspect or sensitive class. *See, e.g., Commonwealth v. Hilliar,* 943 A.2d 984 (Pa.Super.2008), *appeal denied,* 598 Pa. 763, 956 A.2d 432 (2008) (applying rational basis analysis and rejecting appellant's equal protection challenge to DUI statute as failing to consider inherent diversity in human physiology to account for differences in blood alcohol content; holding appellant's elementary classification did not identify suspect/sensitive class or fundamental right); *Commonwealth v. Beshore,* 916 A.2d 1128, 1134 (Pa.Super.2007), *appeal denied,* 603 Pa. 679, 982 A.2d 509 (2007) (holding new DUI law does not affect suspect class or fundamental right; rejecting strict scrutiny analysis for appellant's constitutional challenges); *Commonwealth v. Spease,* 911 A.2d 952, 956 (Pa.Super.2006), *appeal denied,* 603 Pa. 681, 982 A.2d 510 (2009) (recognizing "driving is a privilege, not a fundamental right"; therefore, rational basis was appropriate degree of scrutiny to apply to appellant's equal protection and due process challenges to

DUI law); *McCoy, supra* (holding DUI law did not involve fundamental right/suspect class or important right/sensitive classification; applying rational basis analysis and rejecting appellant's equal protection challenges to statutory categories based on (a) drivers' blood alcohol content at time of test rather than at time of driving, (b) whether accident occurred involving bodily injury or property damage, and (c) imposition of same license suspension where there is no blood alcohol content test result, regardless of whether defendant refused to take test or defendant was not asked to take test).

Appellant's claims concern the provisions governing penalties for DUI offenses, which in pertinent part provide:

### § 3804. Penalties

\* \* \*

**(b) High rate of blood alcohol; minors; commercial vehicles and school buses and school vehicles; accidents.**—Except as set forth in subsection (c), an individual who violates section 3802(a)(1) where there was an accident resulting in bodily injury, serious bodily injury or death of any person or damage to a vehicle or other property or who violates section 3802(b), (e) or (f) shall be sentenced as follows:

(1) For a first offense, to:

(i) undergo imprisonment of not less than 48 consecutive hours;

(ii) pay a fine of not less than $500 nor more than $5,000;

(iii) attend an alcohol highway safety school approved by the department; and

(iv) comply with all drug and alcohol treatment requirements imposed under sections 3814 and 3815.

(2) For a second offense, to:

(i) undergo imprisonment of not less than 30 days;

(ii) pay a fine of not less than $750 nor more than $5,000;

(iii) attend an alcohol highway safety school approved by the department; and

(iv) comply with all drug and alcohol treatment requirements imposed under sections 3814 and 3815.

\* \* \*

75 Pa.C.S.A. § 3804(b). Section 3806 defines prior offenses as follows:

§ 3806 **Prior offenses**

**(a) General rule.**—Except as set forth in subsection (b), the term "prior offense" as used in this chapter shall mean a conviction, adjudication of delinquency, juvenile consent decree, **acceptance of Accelerated Rehabilitative Disposition** or other form of preliminary disposition before the sentencing on the present violation for any of the following

(1) an offense under section 3802 (relating to driving under influence of alcohol or controlled substance);

(2) an offense under former section 3731;

(3) an offense substantially similar to an offense under paragraph (1) or (2) in another jurisdiction; or

(4) any combination of the offenses set forth in paragraph (1), (2) or (3).

**(b) Repeat offenses within ten years.**—The calculation of prior offenses for purposes of sections 1553(d.2) (relating to occupational limited license), 3803 (relating to grading) and 3804 (relating to penalties) shall include any conviction, adjudication of delinquency, juvenile consent decree, **acceptance of Accelerated Rehabilitative Disposition** or other form of preliminary disposition within the ten years before the present violation occurred for any of the following:

(1) an offense under section 3802;

(2) an offense under former section 3731;

(3) an offense substantially similar to an offense under paragraph (1) or (2) in another jurisdiction; or

(4) any combination of the offenses set forth in paragraph (1), (2) or (3).

75 Pa.C.S.A. § 3806(b) (emphasis added). Generally, the classifications in these provisions do not involve a fundamental right or suspect class, or an important right or sensitive classification; therefore, equal protection challenges to the DUI sentencing provisions, including Section 3806, are subject to rational basis analysis. *See McCoy, supra.*

 Regarding the constitutional "fundamental right to liberty" we observe:

Every person has a fundamental right to liberty in the sense that the Government may not punish him unless and until it proves his guilt beyond a reasonable doubt at a criminal [proceeding] conducted in accordance with the relevant constitutional guarantees. But a person who **has** been so convicted is eligible for, and the court may impose, whatever punishment is authorized by statute for his offense, so long as that penalty is not cruel and unusual, and so long as the penalty is not based on an arbitrary distinction that would violate the Due Process Clause of the Fifth Amendment. In this context, . . ., an argument based on equal protection essentially duplicates an argument based on due process.

*Chapman v. U.S.*, 500 U.S. 453, 465, 111 S.Ct. 1919, 1927, 114 L.Ed.2d 524, 529 (1991) (emphasis in original) (holding Congress had rational basis for its penalty scheme for drug distribution, which is intended to punish large volume drug traffickers more severely by assigning greater penalties to distribution of larger quantities of drugs, according to street weight of

drugs in diluted form, rather than according to net weight of active component).

 This Court has held that equal protection objections to criminal recidivist statutes, those based upon prior conduct/convictions, are subject to a rational basis analysis. *Commonwealth v. Stinnett,* 356 Pa.Super. 83, 514 A.2d 154, 160 (1986).

> Support for the classification of defendants based upon prior criminal conduct may be found in the Supreme Court's consistent recognition of the constitutionality of recidivist statutes and rejection of challenges predicated upon constitutional grounds....
>
> ... Such statutes and other enhanced-sentence laws and procedures designed to implement their underlying policies, have been enacted in all the States, and by the Federal Government as well.... Such statutes, ..., have been sustained in this Court on several occasions against contentions that they violate constitutional strictures dealing with double jeopardy, *ex post facto* laws, cruel and unusual punishment, due process, equal protection and privileges and immunities.

*Id.* at 159–60. As a result, enhanced treatment under recidivist statutes does not violate any general constitutionally protected right to liberty.[2] *Id.* at 160.

> The courts of this Commonwealth have repeatedly recognized that the general purpose of graduated sentencing laws is to punish more severely offenders who have persevered in criminal activity despite the theoretically beneficial effects of penal discipline. Stated another way, the purpose of such laws is to enhance punishment when the defendant has exhibited an unwillingness to reform his miscreant ways and to conform his life according to the law. Accordingly, following the recidivist logic, each strike that serves as a predicate offense must be followed by [a disposition] and, by necessary implication, an opportunity to reform, before the offender commits the next strike. However, the recidivist philosophy, while a valid policy, is not the only valid sentencing policy, nor is it a constitutional principle or mandate, and the legislature is free to enact a statute which clearly expresses a different application.

*Commonwealth v. Jarowecki,* 604 Pa. 242, 252–53, 985 A.2d 955, 961–62 (2009) (internal citations and quotation marks omitted). References in our criminal law to a "second offense" or "subsequent offense" suggest a recidivist philosophy. *Id.* at 257, 985 A.2d at 964.

 Under a recidivist sentencing statute, a defendant who commits a "second offense" is eligible to receive an enhanced sentence, if the subsequent offense occurs after disposition of a first offense. *Id.* at 264, 985 A.2d at 968. Where a court convicts a defendant for multiple offenses simultaneously, with no intervening dispo-

---

**2.** Similarly, mandatory sentencing provisions in general do not implicate a "fundamental liberty interest" that would subject the classification to strict scrutiny. *Bell, supra* at 345–46, 516 A.2d at 1178–79 (holding strict scrutiny was inapplicable to challenge to mandatory minimum sentencing statute for conviction of certain felonies committed while possessing firearm because fundamental liberty interest was not at stake); *Commonwealth v. Wright,* 508 Pa. 25, 39, 494 A.2d 354, 361 (1985) (stating: "The liberty interest of a de-

fendant facing a sentencing proceeding pursuant to Section 9712 is similar to that of other convicted defendants awaiting sentence.... His right to remain free from confinement has thus been extinguished"); *Commonwealth v. Eicher,* 413 Pa.Super. 235, 605 A.2d 337, 351 (1992) (stating: "[M]andatory sentencing provisions do not implicate a defendant's fundamental liberty interest, as the defendant's fundamental right, *i.e.,* freedom from confinement, has already been forfeited").

sition that offers the defendant an opportunity to reform through exposure to the judicial system, an enhanced recidivist sentence is not justified. *Id.* (reversing sentence on counts two through eight for possession of child pornography as these counts were not "second or subsequent offenses" for sentencing purposes to count one for possession of child pornography, where all eight counts were charged in same indictment); *Commonwealth v. Haag,* 603 Pa. 46, 981 A.2d 902 (2009) (holding defendant was improperly sentenced as second-time offender under DUI statute where he committed two Section 3802 offenses in less than two hours and was convicted of both charges in same judicial proceeding).

In *Haag,* our Supreme Court recognized the recidivist nature of the sentencing provisions in the DUI statute at issue and held that for purposes of the penalty provisions of Section 3804, courts should apply the definition of prior offense found in Section 3806(b). *Id.* at 55, 981 A.2d at 907 (referring to certain sections of DUI statute as "the recidivist sentencing provisions of the DUI statute"). The Court said:

> [W]hen presented with two or more Section 3802 DUI violations, a sentencing court must first ascertain whether conviction on the first violation occurred before the offender committed the subsequent offense. If no conviction on that previous violation had occurred by the time the offender committed the subsequent violation, pursuant to Section 3806(b), the offender cannot be sentenced as a recidivist on the subsequent violation. . . .

*Id.* Section 3806 explicitly defines a prior offense to include any conviction, adjudication of delinquency, juvenile consent decree, **acceptance of ARD** or other form of preliminary disposition, within the ten years before the present violation occurred, 75 Pa.C.S.A. § 3806. The *Haag* Court treated all of the various dispositions listed in Section 3806, including acceptance of ARD, collectively as a "conviction" in this context.[3] *Haag, supra* at 52, 981 A.2d at 905.

■ Finally, issues not raised in the trial court are waived and cannot be raised for the first time on appeal. *Commonwealth v. Stevenson,* 894 A.2d 759, 766 (Pa.Super.2006), *appeal denied,* 591 Pa. 691, 917 A.2d 846 (2007); Pa.R.A.P. 302(a).

Instantly, police arrested Appellant for DUI on April 12, 2008. As a result, Appellant accepted ARD on July 22, 2008. On October 3, 2009, while he was still enrolled in ARD, Appellant was involved in another DUI and arrested. On February 16, 2010, Appellant was removed from the ARD program. That same day, he pled guilty to both the April 2008 and the October 2009 DUI charges. On April 13, 2010, the court sentenced Appellant as a second-time offender for his October 2009 DUI.

■ When disputing his sentence, Appellant did not raise any argument in the trial court in favor of strict scrutiny of Section 3806, based upon a violation of his "fundamental right to liberty." Thus, he waived this particular challenge for review. Moreover, his challenge would not merit relief. Appellant's admission of guilt for both DUI offenses had already diminished

---

**3.** Other sections of the Vehicle Code and the Crimes Code similarly provide that a prior offense includes acceptance of ARD. *See, e.g.,* 75 Pa.C.S.A. § 1542(c) (stating acceptance of ARD for offense enumerated in subsection (b) shall be considered prior offense for purposes of habitual motorist offender statute); 18 Pa. C.S.A. § 6305(e) (providing ARD or any other pre-adjudication alternative for violation of subsection (a) constitutes prior offense for purposes of imposing criminal penalties under subsections (b)(1) and (b)(2) of statute governing sale of tobacco).

his liberty interests. Thus, the court could impose whatever punishment the statute authorized. *See Chapman, supra.* In other words, Appellant's "fundamental right to liberty" argument is misplaced because the statute in question relates to sentencing.

The DUI classification at issue in this case distinguishes defendants who have accepted ARD for an initial DUI offense prior to committing a subsequent DUI offense. Defendants who have accepted ARD are treated as repeat offenders subject to an enhanced sentence under Section 3804 for their subsequent DUI offense(s). In contrast, those defendants who are convicted of multiple DUI offenses .at the same time, without any intervening disposition including acceptance of ARD, are treated as first-time offenders. Appellant failed to show how this classification involves a fundamental right or suspect class to warrant strict scrutiny of Section 3806. *See Stinnett, supra.* Therefore, his equal protection challenge to Section 3806 is subject to rational basis analysis, and the classification at issue will be valid as long as it is rationally related to a legitimate government interest. *See Bell, supra.*

■ The state has a legitimate interest in reducing recidivism and preventing offenders from committing subsequent DUI offenses following intervention and the opportunity to reform. To effectuate this interest, the Legislature created sentencing provisions to enhance the penalty for offenders who commit a subsequent DUI within ten years of one of the specifically enumerated dispositions for an initial DUI, including acceptance of ARD. The Legislature expects that ARD, by virtue of its rehabilitative prospects, would deter participants from committing future offenses. Thus, under recidivist logic, individuals who commit a second DUI offense despite the theoretical benefits of acceptance of ARD should receive a greater punishment than individuals who commit two DUI offenses without any intervening chance to reform.

In addition, the classification at issue promotes the government objective of protecting the public roadways and maintaining public safety, which courts have accepted as legitimate in upholding previous provisions of the Pennsylvania DUI under a rational basis test. *See Hilliar, supra; Commonwealth v. Etheredge,* 794 A.2d 391, 397 (Pa.Super.2002) (recognizing as legitimate government objective "to promote safety by keeping intoxicated drivers off of the roads" under rational basis examination). In sum, Section 3806 is rationally related to several legitimate government interests and does not violate Appellant's right to equal protection as alleged.

Here, Appellant accepted ARD for his April 2008 DUI offense approximately fifteen (15) months before he committed his October 2009 DUI offense and well within the ten-year look-back period included in Section 3806. Consequently, under Section 3806, Appellant had a prior offense at the time of his sentencing for the October 2009 DUI offense. Therefore, the sentencing court properly sentenced Appellant as a second-time offender under Section 3804.

Finally, we reject Appellant's argument that Section 3806 should require "completion" of ARD. Under Appellant's proposed definition, only those individuals who accept and complete ARD would be sentenced as second-time offenders for a subsequent DUI offense, whereas individuals who do not complete ARD would be sentenced as first-time offenders. Appellant's proposal would effectively create an incentive to avoid ARD requirements and promote an absurd result that could not have been the Legislature's intent. *See In re B.A.M.,* 806 A.2d 893, 894 (Pa.Super.2002) (stating: "[T]he General Assem-

bly does not intend a result that is absurd, impossible of execution, or unreasonable").

Based upon the foregoing, we hold Section 3806 does not violate Appellant's constitutional rights to equal protection/fundamental liberty as alleged. Therefore, Appellant's sentence is lawful, and his claims merit no relief. Accordingly, we affirm.

Judgment of sentence affirmed.